IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHASE PEDEN, et al.,

    Plaintiffs,

    v.

                        CIVIL ACTION FILE
                        NO. 1:18-CV-5861-TWT

GLENN STEPHENS, et al.,

    Defendants.

## OPINION AND ORDER

This is a Section 1983 action. It is before the Court on Defendant Stephens' Motion for Summary Judgment [Doc. 127], Defendant Conway's Motion for Summary Judgment [Doc. 128], and Defendant Solis' Motion for Summary Judgment [Doc. 129]. For the reasons set forth below, the Court GRANTS Defendant Stephens' Motion for Summary Judgment [Doc. 127], Defendant Conway's Motion for Summary Judgment [Doc. 128], and Defendant Solis' Motion for Summary Judgment [Doc. 129].

## I.    Background

Plaintiffs Chase and Marjorie Peden are married. First Am. Compl., [Doc. 9], at ¶ 1. Plaintiff Chase Peden was a deputy with the Gwinnett County Sheriff's Department from 2004 to 2018. *Id.* at ¶ 12. Defendants Carole and Glenn Stephens are married. *Id.* ¶ 66. Glenn Stephens has worked as the Gwinnett County Administrator since 2009. Resp. to Defs.' Statement of

Material Facts ("DSMF"), at ¶ 1. Chase Peden and Carole Stephens allegedly engaged in an extramarital affair in Spring 2014 to 2017. First Am. Compl., at ¶ 13.

From the time the affair began and continuing for several years, members of the Peden family allegedly received numerous anonymous and harassing letters, emails, voicemails, and text messages referencing Mr. Peden or Mrs. Peden having an affair. *Id.* at ¶ 18. Anonymous letters were sent to the Pedens' church, the senior pastor of the church and to a neighbor, accusing Mrs. Peden of being seen in the company of men other than her husband. *Id.* at ¶¶ 14-15. After the affair ended in 2017, the stalking of the Pedens allegedly continued, including two instances of the Pedens' vehicles being "keyed," *id.* at ¶¶ 81-82, more anonymous letters being sent to Mrs. Peden's place of employment, *id.* at ¶¶ 54, 71, 91, and letters and messages being sent to their children, *id.* at ¶ 73. Mrs. Peden also allegedly received anonymous voicemails and text messages alluding to her husband's affair. *Id.* at ¶¶ 27-28.

On August 18, 2017, the Gwinnett County Police Internal Affairs Unit received mail that contained a piece of paper with three pictures of Chase Peden attached to it, along with a handwritten note that said, "Chase Peden meeting his girlfriend while on duty!". Resp. to DSMF, at ¶ 12.   The Professional Standards Unit of the Gwinnett County Sheriff's Office ("PSU") operates in part as the internal affairs unit of the Sheriff's Office and investigates complaints about employees of the Sheriff's Office. *Id.* at ¶ 5. Lt.

2

Brown, who was Commander of PSU from March 30, 2019 to December 14, 2019, interviewed Mr. Peden about the pictures on October 5, 2017. *Id.* at ¶¶ 6, 14. Mr. Peden denied both having a girlfriend and meeting anyone while on or off duty. *Id.*

On December 19, 2017, incident to an investigation of Chase Peden in PSU Case Number 17-B-068 regarding whether he had been truthful in complaining about a corporal, Sheriff Butch Conway, who has been the elected Sheriff of Gwinnett County for twenty-three years, issued a disciplinary determination finding that Chase Peden had not been truthful, although Mr. Peden disputes this. *Id.* at ¶¶ 2, 15. Mr. Peden was subjected to a written reprimand, transferred, and provided counseling with a written warning that any future behavior where he was found to be untruthful would result in termination. *Id.* On December 28, 2017, pursuant to Sheriff Conway's decision in PSU Case Number 17-B-068, Mr. Peden was transferred and reassigned from the Jail Administration/Support Section to the Jail Shift Operations Section. *Id.* at ¶ 18. Under the Gwinnett County Merit System Rules which governed Mr. Peden's employment as a Gwinnett County Sheriff's Office deputy, a regular status employee may appeal a recommendation by the Executive Secretary upholding or reversing any of the following official actions: involuntary dismissal, involuntary demotion, suspension, or a written reprimand to the Executive Secretary. Gwinnett Cnty. Merit Sys. Rules, at Section 220.000.

In late December 2017, Sheriff Conway, Chief Lou Solis, who has been the Chief Deputy of Operations of the Gwinnett County Sheriff's Office since 2017 and reports directly to Conway, and Lt. Brown all read a typed letter dated December 26, 2017 about Chase Peden. *Id.* at ¶¶ 3, 19. The letter stated:

> Don't want to be a whistle blower [sic]. However, Deputy Chase Peden is still having an affair. How would the public like to know that the sheriffs [sic] department continues to let this behavior happen even after the previous letters? Deputy Peden uses his sheriff's car, county issued phone, uniform and time on the clock to meet his girlfriend's [sic]. After he fuels up the car at the fueling station he goes across the street to vacant houses to meet one of the girlfriends [sic] to have sex. January 5, 2017, he parked his sheriff car at Collins Hill fire station and met up with another woman. Even his part time [sic] security job at Eastside Station in Snellville he uses his car and handcuffs. He brags about how the woman [sic] like that. Some of us in the department are tired of his behavior and belief that Sheriff Conway would not approve of this action. He probably would not like it since this has been brought to your attention before today. Thank you,
>
> Michael

*Id.* at ¶ 19.

Chief Solis told Lt. Brown to investigate the allegations contained in the "Michael Letter." *Id.* at ¶ 20. Lt. Brown opened PSU Case Number 17-A-082. *Id.* Lt. Brown investigated Chase Peden's use of his county-issued cell phone and the Sheriff's Office's car as well as interviewed multiple employees of the transport unit. *Id.* at ¶ 21. Lt. Brown also interviewed Chase Peden before and after a polygraph exam. *Id.* Mr. Peden was given the opportunity to tell Lt. Brown anything he thought he should know and was allowed time to provide receipts and documentation to Lt. Brown. *Id.* at ¶ 23. Mr. Peden denied the

T:\ORDERS\18\Peden\msjtwt.docx

allegations in the Michael Letter. *Id.* Sergeant Melanie Jones of the Gwinnett Sheriff's Office conducted Chase Peden's specific issue polygraph test on March 1, 2018. *Id.* at ¶ 25.

During the investigation, Chief Solis informed Lt. Brown that he had spoken to Glenn Stephens and learned that Chase Peden was having an affair with Carole Stephens. *Id.* at ¶ 27. After Chief Solis asked if Carole Stephens had come up in the investigation, Lt. Brown told Chief Solis he was not going to put her name in the report because he did not find it to be an important factor. Glenn Stephens never contacted Lt. Brown during the investigation. *Id.* at ¶ 30. No employee or elected official of Gwinnett County requested that Sheriff Conway omit Carole Stephens' name from the PSU investigation. *Id.* at ¶ 31. Lt. Brown was never instructed to leave Carole Stephens' name out of the report for the PSU investigation of Chase Peden. *Id.* at ¶ 32. There is no evidence that Sheriff Conway nor Chief Solis exercised any authority over any decisions made in the PSU case of Mr. Peden. *Id.* at ¶ 33.

Upon completion of the PSU case report, Lt. Brown submitted it to Major Mike Powell, who was Commander of PSU, for review. *Id.* at ¶¶ 24, 35. Major Powell returned the PSU case report to Lt. Brown who then forwarded copies to Chase Peden's applicable chain of command for review. *Id.* at ¶ 36. Although Mr. Peden was assigned to the jail at the time the PSU case was initiated, Lt. Brown testified that he sent the copies to Peden's chain of command in transport since those were his supervisors at the time of the incidents in

question. *Id.* at ¶ 37. Mr. Peden disputes that the supervisors were part of his chain of command. *Id.* Each employee who was sent the copies reviewed the PSU case report, noted their findings on the disposition sheets, sustained each alleged violation, and determined Chase Peden should be terminated. *Id.* at ¶ 38. Once the disposition sheets were completed by Sheriff Conway, the original copy of the report for the PSU case, including the disposition sheets, were returned to PSU, where the report is maintained. *Id.* at ¶ 39. The report is part of Chase Peden's personnel file at the Sheriff's Office and is subject to review upon proper request, such as a Georgia Open Records Act request. *Id.* This is standard for all PSU case reports. *Id.*

On March 16, 2018, Chief Solis, along with Colonel Don Pinkard and Major Frank Woods, met with Mr. Peden to inform him of the Sheriff's Office's intent to terminate him and provide him written notice. *Id.* at ¶ 40. Pursuant to the Sheriff's Office's Notice of Intent to Terminate, Chase Peden was provided the opportunity to present any information to Chief Solis at a future meeting at Mr. Peden's request, and Mr. Peden was placed on administrative leave. *Id.* at ¶ 44. On March 22, 2018, Chief Solis, Col. Pinkard, and Major Woods met with Chase Peden so that Mr. Peden could provide additional information regarding the PSU investigation. *Id.* at ¶ 46. Mr. Peden did not have any documentation, so Chief Solis gave him twenty-four hours to provide any additional materials to be considered for his benefit. *Id.* at ¶ 46. On March 23, 2018, Mr. Peden provided Chief Solis documents, including a memo

6

addressed to Chief Solis and Sheriff Conway. *Id.* at ¶ 48. Sheriff Conway reviewed the memo but does not recall the other documents. *Id.* at ¶ 49. The parties agree that nothing in the additional documents provided by Mr. Peden showed that he did not violate the polices as alleged in the PSU case report. *Id.* at ¶ 50.

At the time of the termination decision, Sheriff Conway had not communicated with Glenn Stephens about Chase Peden. *Id.* at ¶ 55. Glenn Stephens also never asked Sheriff Conway for any favors or implied favors relating to Mr. Peden or issues related to the case. *Id.* at ¶ 56. On March 28, 2018, Chase Peden was notified of Sheriff Conway's decision to terminate him based on violations of the Sheriff's Office's Rules contained in Chapter 13, Section 26 (Prompt Performance/Neglect of Duty), Section 36 (Duty in Regards to use of County Supplies) and Section 58 (Conduct Unbecoming On/Off Duty). *Id.* at ¶ 57. Chase Peden understood that he could appeal his termination using the Gwinnett County Merit System appeal procedures. *Id.* at ¶ 58.

Chase Peden filed an appeal of his termination that same day. *Id.* at ¶ 59. His appeal was acknowledged, and a meeting was scheduled with the Executive Secretary of the Gwinnett County Merit Board for May 16, 2018. *Id.* at ¶ 60. On April 9, 2018, Tony Thomas, a television reporter, made a written request under the Georgia Open Records Act to the Sheriff's Office for the file of Chase Peden, including any documents related to his termination and/or resignation. *Id.* at ¶ 61. After Mr. Peden's investigation was completed, Lt.

7

Brown created a copy of Mr. Peden's file and gave it to Shannon Volkodav, a deputy with the Sheriff's Office who serves as the Public Information Officer, for the reporter to review. *Id.* at ¶¶ 7, 63. Mr. Peden's file included the "Michael Letter." On April 10, 2018, about a month before Mr. Peden's scheduled appeal, Mr. Thomas ran a televised news story about Mr. Peden. *Id.* at ¶ 66. The Plaintiffs have no evidence that Glenn Stephens, Sheriff Conway or Chief Solis had any control over the content of the televised news story. *Id.* at ¶ 67. Glenn Stephens did not provide any information about Chase Peden to the media or ask anyone to provide such information. *Id.* at ¶ 68. Sheriff Conway was not aware of any media leaks about Chase Peden prior to the televised story. *Id.* at ¶ 69. Chief Solis was not contacted by any media representatives about Chase Peden, and he never talked to Tony Thomas about Chase Peden. *Id.* at ¶ 70.

On May 16, 2018, Chase Peden attended the Merit Board Executive Secretary meeting with his two attorneys, Carey Olson and Deborah Haughton. *Id.* at ¶ 72. Lt. Brown, Chief Solis, and Assistant County Attorney Murray Weed represented the Sheriff's Office *Id.* at ¶ 73. The attorneys negotiated prior to the Executive Secretary's arrival. *Id.* at ¶ 74. Incident to those negotiations, the parties entered into a Settlement Agreement as follows: (A) Peden would be allowed to resign effective March 28, 2018; (B) the Sheriff's Office would withdraw the Intent to Terminate and Termination Notice from Chase Peden's personnel file and substitute Peden's voluntary resignation letter; (C) The Gwinnett County separation notice would note a resignation by

8

Peden with eligibility for rehire; (D) Peden would withdraw his appeal of the termination with prejudice; and (E) the Sheriff's Office would inform the Georgia Peace Officer Standards and Training Council of Peden's voluntary resignation and the Sheriff's Office's withdrawal of the Intent to Terminate and Termination notice. *Id.* at ¶ 75. Chase Peden entered the Settlement Agreement voluntarily and spoke to his counsel about the Agreement. *Id.* at ¶ 78. Chase Peden drafted his own resignation letter and submitted it on May 22, 2018. *Id.* at ¶¶ 83-84.

If Chase Peden had chosen to proceed with the meeting with the Merit Board Executive Secretary, Mr. Weed was fully prepared to do so and planned on calling Chief Solis and Lt. Brown as witnesses. *Id.* at ¶ 85. Mr. Peden understood that if he had not entered the Settlement Agreement and was not otherwise satisfied with the proceedings before the Merit Board Executive Secretary that he had a right to go before the full Merit Board to have an evidentiary hearing. *Id.* at ¶ 86. Chase Peden was also aware that the appeal process could continue after a full Merit Board evidentiary hearing and outside of the County Merit System, whereby he had a right to appeal his termination to the Gwinnett County Superior Court as allowed under Georgia law. *Id.* at ¶ 92. Rather than continuing the appellate process, Chase Peden chose to accept the terms of the Settlement Agreement because he "got what he wanted." *Id.* at ¶ 93.

In early June 2018, Peden requested that D.A. Porter criminally charge

9

Mrs. Stephens for stalking and harassment. First Am. Compl., at ¶ 77. During his investigation, Porter never contacted Sheriff Conway or Chief Solis. Resp. to DSMF, at ¶¶ 111-112. D.A. Porter met with Glenn Stephens. *Id.* at ¶ 116. They discussed the affair, the D.A.'s investigation against Carole Stephens, and the requested interview with Mrs. Stephens. *Id.* at ¶ 117. Mr. Stephens attended the interview with his wife. *Id.* at ¶ 119. During the interview, they discussed the affair, contacts and relationship with the Pedens, the texts, emails, letters, and damage to the Pedens' cars. *Id.* at ¶ 122. Carole Stephens admitted to sending the Michael Letter. *Id.* at ¶ 123. After the interview, D.A. Porter, with input from his investigators, decided that the allegations made by the Pedens did not present a case against Carole Stephens. *Id.* at ¶ 125. As the Gwinnett Judicial Circuit District Attorney, Porter decides what cases are prosecuted. *Id.* at ¶ 133. There is no second opinion. *Id.*

On January 23, 2019, the Plaintiffs filed their First Amended Complaint against Defendants Glenn and Carole Stephens, Butch Conway, Lou Solis, Danny Porter, and "John Doe" for violations of 42 U.S.C. § 1983, violations of 42 U.S.C. § 1985, defamation, and intentional infliction of emotional distress. First Am. Compl., [Doc. 9]. The Court already dismissed this case with respect to Defendant Porter. Order, [Doc. 111]. On June 5, 2020, Defendants Glenn Stephens, Butch Conway, and Lou Solis each filed Motions for Summary Judgment as to all claims against them. [Docs. 127, 128, 129].

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).   The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III.    Discussion

Defendants Glenn Stephens, Butch Conway, and Lou Solis move for judgment in their favor regarding Counts I – VI. The Plaintiffs have voluntarily withdrawn Counts III and IV of the Amended Complaint. Resp. to Conway and Solis' MSJ, [Doc. 141], at 9; Resp. to Stephens' MSJ, [Doc. 140], at 16-17. Thus, the Court only will address Counts I, II, V, and VI.

T:\ORDERS\18\Peden\msjtwt.docx

Under Count I, Chase Peden alleges that Mr. Stephens and Chief Solis violated 42 U.S.C. § 1983. The Court agrees with the Defendants that Conway was not named as a Defendant in Count One. The Court will only address Count I as it refers to Mr. Stephens and Chief Solis.

The Plaintiffs' Section 1983 claims are not clearly pleaded. The Plaintiffs couch various unrelated allegations under the Section 1983 claims. Under Count I, Chase Peden alleges that Glenn Stephens influenced the decision to terminate Mr. Peden by improperly exercising his political influence and recommending an investigation as the Gwinnett County Administrator. First Am. Compl., at ¶¶ 101-102. Mr. Peden asserts that Glenn Stephens ultimately convinced Sheriff Conway and Chief Solis to terminate his employment. *Id.* at ¶ 102. Additionally, Mr. Peden maintains that Mr. Stephens and Chief Solis orchestrated the leak that made the false allegations against him public knowledge. *Id.* at ¶ 103. Mr. Peden alleges that he has not been given a name-clearing hearing. *Id.* at ¶ 104. He also states that Mr. Stephens, Sheriff Conway and Chief Solis violated his constitutional due process rights by causing reputational damage to him in conjunction with the termination of his employment. *Id.* at ¶ 105. Mr. Peden then pleads that he is entitled to damages under Section 1983 for the denial of his protected liberty interest in his public employment as secured by the Fourteenth Amendment. *Id.* at ¶ 106.

To allege a Section 1983 claim, "the plaintiff must allege that a person

T:\ORDERS\18\Peden\msjtwt.docx

deprived her of a federal or constitutional right and that the person was acting under color of law." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995). Mr. Peden's allegations most closely refer to a procedural due process claim. A Section 1983 claim alleging a denial of procedural due process under the Fourteenth Amendment "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "The requirements of procedural due process apply only to the deprivation of interest encompassed by the fourteenth amendment's protection of liberty and property." *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989).

Mr. Peden alleges a deprivation of property interest in his employment. To establish that procedural due process was denied in connection with some employment action such as termination or demotion, the plaintiff must first show that he or she had a protected property interest in the employment. "State law determines whether a public employee has a property interest in his or her job." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991). "A person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment." *Id.* While a public employee generally has no property right in such employment, "[a] public employee who may be terminated only for cause . . . has a protected property interest in continued employment." *Id.* The

Defendants do not dispute that Mr. Peden has a property interest in his job as a deputy with the Gwinnett County Sheriff's Department.

Thus, Mr. Peden must show that adequate state remedies were not available to cure the deprivation of his property interest in employment. *See Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990). The due process clause encompasses a guarantee of fair procedure. *Id.* The alleged deprivation by state action of a constitutionally protected property interest is not in itself unconstitutional, but it is the deprivation of such an interest without due process of law. *Id.* To determine whether a constitutional violation has occurred, the Court looks at what process the State provided and whether it was constitutionally adequate. *Id.* The inquiry "would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id.* As an initial matter, an "employee is entitled to 'some kind' of pre-termination hearing." *McKinney v. Pate,* 20 F.3d 1550, 1561 (11th Cir. 1994). However, the pre-termination hearing required by due process "is not a mini-trial and 'need not definitely resolve the propriety of the discharge . . . .'" *McKinney,* 20 F.3d at 1561. Due process only requires that an employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story . . . ." *Id.* Where there is a property right to employment, procedural due process not only requires a pre-termination hearing, but also a post-termination

14

procedure. The post-termination hearing must include opportunity to present and cross examine witnesses and be held before an impartial tribunal.

Viewing the facts in a light most favorable to the non-movant, the record reveals that Mr. Peden was provided written notice of the charges against him, was provided an explanation of the evidence against him, and was provided an opportunity to present his side of the story. Specifically, Mr. Peden was given the opportunity to tell Lt. Brown anything he thought he should know regarding his investigation including providing receipts and documentation to Lt. Brown. Resp. to DSMF, at ¶ 23. On March 16, 2018, Chief Solis met with Mr. Peden to inform him of the Sheriff's Office's intent to terminate him and provided him with written notice. *Id.* at ¶ 40. Pursuant to the Sheriff's Office's Notice of Intent to Terminate, Chase Peden was provided the opportunity to present any information to Chief Solis at a future meeting at Mr. Peden's request, and Mr. Peden was placed on administrative leave. *Id.* at ¶ 44. On March 22, 2018, Chief Solis, Col. Pinkard, and Major Woods met with Chase Peden so that he could provide additional information regarding the PSU investigation. *Id.* at ¶ 46. Mr. Peden did not have any documentation, so Chief Solis gave him twenty-four hours to provide any additional materials to be considered for his benefit. *Id.* at ¶ 46. On March 23, 2018, Mr. Peden provided Chief Solis documents, including a memo addressed to Chief Solis and Sheriff Conway. *Id.* at ¶ 48. The due process clause of the Fourteenth Amendment requires nothing more of a pre-termination hearing.

15

Post-termination, Chase Peden was provided with the opportunity to present and cross examine witnesses before an impartial tribunal, although he chose to forgo this opportunity when he voluntarily settled. On March 28, 2018, Mr. Peden was notified of Sheriff Conway's decision to terminate him based on violations of the Sheriff's Office's Rules contained in Chapter 13, Section 26 (Prompt Performance/Neglect of Duty), Section 36 (Duty in Regards to use of County Supplies) and Section 58 (Conduct Unbecoming On/Off Duty). *Id.* at ¶ 57. Chase Peden understood that he could appeal his termination using the Gwinnett County Merit System appeal procedure. *Id.* at ¶ 58. Mr. Peden filed an appeal of his termination that same day. *Id.* at ¶ 59. His appeal was acknowledged, and a meeting was scheduled with the Executive Secretary of the Gwinnett County Merit Board for May 16, 2018. *Id.* at ¶ 60.

On May 16, 2018, Chase Peden attended the Merit Board Executive Secretary meeting with his two attorneys, Carey Olson and Deborah Haughton. *Id.* at ¶ 72. Lt. Brown, Chief Solis, and Assistant County Attorney Murray Weed represented the Sheriff's Office *Id.* at ¶ 73. The attorneys negotiated pending the Executive Secretary's arrival. *Id.* at ¶ 74. Incident to those negotiations, the parties entered into a Settlement Agreement as follows: (A) Peden would be allowed to resign effective March 28, 2018; (B) the Sheriff's Office would withdraw the Intent to Terminate and Termination Notice from Chase Peden's personnel file and substitute Peden's voluntary resignation letter; (C) the Gwinnett County separation notice would note a resignation by

16

Peden with eligibility for rehire; (D) Peden would withdraw his appeal of the termination with prejudice; and (E) the Sheriff's Office would inform the Georgia Peace Officer Standards and Training Council of Peden's voluntary resignation and the Sheriff's Office withdrawal of the Intent to Terminate and Termination notice. *Id.* at ¶ 75. Chase Peden entered the Settlement Agreement voluntarily and spoke to his counsel about the Agreement. *Id.* at ¶ 78. Mr. Peden drafted his own resignation letter and submitted it on May 22, 2018. *Id.* at ¶¶ 83-84.

If Chase Peden had chosen to proceed with the meeting with the Merit Board Executive Secretary, Mr. Weed was fully prepared to do so and planned on calling Chief Solis and Lt. Brown as witnesses. *Id.* at ¶ 85. Mr. Peden understood that if he had not entered the Settlement Agreement and was not otherwise satisfied with the proceedings before the Merit Board Executive Secretary, he had a right to go before the full Merit Board to have an evidentiary hearing. *Id.* at ¶ 86. Chase Peden was also aware that the appeal process could continue after a full Merit Board evidentiary hearing and outside of the County Merit System, whereby he had a right to appeal his termination to the Gwinnett County Superior Court as allowed under Georgia law. *Id.* at ¶ 92. Rather than continuing the appellate process, Mr. Peden chose to accept the terms of the Settlement Agreement because he "got what he wanted." *Id.* at ¶ 93. Now, Mr. Peden cannot allege that he was deprived of his property interest without due process. "If adequate state remedies were available but

the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Hein v. Kimbrough*, 545 F. Appx. 926, 928 (11th Cir. 2013) (internal quotations and citations omitted).

Viewing the facts in a light most favorable to the non-movant, it appears that Mr. Peden attempts to allege a deprivation of a liberty interest in his name or reputation when his employee personnel file was made public. On April 9, 2018, Tony Thomas, a television reporter, made a written request under the Georgia Open Records Act to the Sheriff's Office for the file of Chase Peden, including any documents related to his termination and/or resignation. Resp. to DSMF, at ¶ 61. After Mr. Peden's investigation was completed, Lt. Brown created a copy of Mr. Peden's file and gave it to Shannon Volkodav, a deputy with the Sheriff's Office who serves as the Public Information Officer, for the reporter to review. *Id.* at ¶¶ 7, 63. Mr. Peden's file included the "Michael Letter." On April 10, 2018, about a month before Mr. Peden's scheduled meeting with the Merit Board Executive Secretary, Tony Thomas ran a televised news story about Mr. Peden. *Id.* at ¶ 66.

To determine whether an individual's liberty interest has occurred without due process of law, the plaintiff must show (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing. *Buxton*, 871 F.2d at 1042-43. The

18

Eleventh Circuit has held that the presence of stigmatizing information in a discharged police officer's personnel file and internal affairs report which became public pursuant to statute after an investigation which culminated in the officer's termination constituted sufficient publication to implicate the officer's liberty interest even though the city filed the report in public records in accordance with state law. *Id*. O.C.G.A. § 50-18-71 requires the custodian of a non-exempt public record to permit the inspection of that record by any member of the public requesting to do so in accordance with the Georgia Open Records Act.

The Eleventh Circuit has held that a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records or otherwise published and that notice of the right to such a hearing is required. *See Buxton*, 871 F.2d at 1046; *see also Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). The process due is that which will allow the aggrieved party "a name clearing hearing." *Harrison v. Wille*, 132 F.3d 679, 683 n.9 (11th Cir. 1998). This means that during the name clearing hearing the employee must have the opportunity to "support his allegations by argument, however brief, and if need be, by proof, however informal." *Campbell v. Pierce County Ga.*, 741 F.2d 1342, 1345 (11th Cir. 1984). The hearing need not take place before termination or the publication of the damaging information. *Id*. "Because this opportunity [for a name clearing hearing] is not as strict as the process

19

required before one can be deprived of a property interest, due process [is] satisfied by the same opportunities provided for notice and hearing from the termination itself . . . ." *Harrison*, 132 F.3d at 683 n.9. Tony Thomas ran the televised news story about Mr. Peden and the contents of his employee personnel file after Mr. Peden's investigation had concluded but prior to the Merit System hearing where Mr. Peden chose to settle in lieu of a full evidentiary hearing. As stated above, Mr. Peden received all process he was due as a matter of law.

Under Count II, Chase and Marjorie Peden allege again that Defendant Glenn Stephens violated 42 U.S.C. § 1983. The Plaintiffs state similar allegations as in Count II except they now include Marjorie Peden. But the Plaintiffs make no attempt to plead that Mrs. Peden was deprived of a property interest or liberty interest under the Fourteenth Amendment. Because the Court found that Mr. Peden was afforded all process that he was due as a matter of law and Mrs. Peden fails to plead a separate Section 1983 claim, the Court grants judgment in favor of Defendants Glenn Stephens, Butch Conway and Lou Solis regarding Counts I and II.

Under Count V, Chase Peden alleges defamation against Defendants Glenn Stephens, Butch Conway and Lou Solis. Mr. Peden alleges that the Defendants conspired with others to reveal confidential documents and video from the Sheriff's Department's investigation and caused the alleged defamatory statements made by Carole Stephens to be published to a wide

number of persons in public. First Am. Compl., at ¶ 141. Although unclear from the Plaintiffs' pleadings, it appears that Mr. Peden bases his defamation claim on Tony Thomas' Open Record Request for Mr. Peden's personnel file and the subsequent news story about Mr. Peden. After Mr. Peden's investigation was completed, Lt. Brown created a copy of Mr. Peden's file and gave it to Shannon Volkodav, a deputy with the Sheriff's Office who serves as the Public Information Officer, for Mr. Thomas to review. Resp. to DSMF, at ¶¶ 7, 63. The PSU report was done by Lt. Brown, and the "Michael Letter" was a part of the PSU report. *Id.* at ¶¶ 20, 21.

It is undisputed that Glenn Stephens, Sheriff Conway or Chief Solis did not have any control over the content of the televised news story. *Id.* at ¶ 67. It is also undisputed that Mr. Stephens did not provide any information about Chase Peden to the media or ask anyone to provide such information. *Id.* at ¶ 68. Sheriff Conway was not aware of any media leaks about Chase Peden prior to the televised story. *Id.* at ¶ 69. Chief Solis was not contacted by any media representatives about Chase Peden, and he never talked to Tony Thomas about Mr. Peden. *Id.* at ¶ 70. Furthermore, the Georgia Court of Appeals held in *Smith v. Lott*, 730 S.E.2d 663, 669 (2012) that disclosure of information in a personnel file that could otherwise be obtained through an Open Records Act request is not actionable as publication of defamatory material, no matter how malicious, so long as the information in the personnel report is included by a supervisor who has authority regarding the contents of the report, and the

report is sent to the keeper of personnel records.

Any possible liability on the Defendants could only flow through Chief Solis' or Sheriff Conway's supervision of Lt. Brown or Shannon Volkodav. But the Defendants' supervision of these employees would be governed by the doctrine of official immunity. "Official immunity protects public officers acting in their official capacity from suit unless they negligently perform a ministerial duty or act with actual malice or intent to cause injury while performing a discretionary duty." *Brock v. Sumter County School Bd.*, 246 Ga. App. 815, 819 (2000). The term "actual malice," when used in the context of the official immunity doctrine, "requires a deliberate intention to do wrong." *Crisp County Sch. Sys.,* 487 S.E.2d at 515 (Ga. App. 1997). Georgia courts have "consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function." *Russell v. Barrett*, 673 S.E.2d 623, 629 (Ga. App. 2009).

To establish that the Defendants are not entitled to official immunity, the Plaintiffs must show that they performed their official duties with actual malice while supervising Lt. Brown's creation of the PSU Report and Shannon Volkodav's actions regarding the Open Records Request. Mr. Peden has presented no evidence that would allow a reasonable jury to conclude that the Defendants acted with actual malice or an intent to harm the Plaintiffs. Thus, the Court grants judgment in favor of Defendants Glenn Stephens, Butch

Conway, and Lou Solis regarding Count V.

Under Count VI, the Plaintiffs claim intentional infliction of emotional distress against Defendants Glenn Stephens, Butch Conway, and Lou Solis. The Plaintiffs allege that the Defendants intentionally, deliberately, and recklessly caused severe emotional distress to Plaintiff Chase Peden by defaming him in a public forum. First Am. Compl., at ¶ 150. The Plaintiffs also allege that Mr. Stephens intentionally, deliberately, and recklessly caused severe emotional distress to the Plaintiffs as a result of his conspiracy to squelch a criminal case against Carole Stephens. *Id.* at ¶ 151. To establish a claim for intentional infliction of emotional distress, the Plaintiffs must prove that the Defendants subjected them to intentional or reckless conduct that was extreme and outrageous and caused severe emotional distress. *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1339 (11th Cir. 2004).

A claim for intentional infliction of emotional distress requires more than an allegation that a plaintiff was offended or insulted. *See Kornegay v. Mundy*, 379 S.E.2d 14, 16 (Ga. App. 1989). In fact, the burden on the plaintiff is "a stringent one." *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 336 (1991). "Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lockhart v. Marine Mfg. Corp.*, 635 S.E.2d 405, 407 (Ga. App. 2006) (internal quotations marks

23

omitted). The Plaintiffs fail to proffer any evidence or detailed facts indicative of the level of outrageousness or willfulness necessary to state a claim for intentional infliction of emotional distress.

Mr. Peden testified that his claim against Mr. Stephens is based on Mr. Stephens' conversation with the District Attorney's Office to forgo prosecuting Carole Stephens. Chase Peden Dep. at 245-46. Mrs. Peden testified that the basis of her claim against Mr. Stephens is that he asked for Carole Stephens' name to be left out of the investigation of her husband. Marjorie Peden Dep. at 234, 237. Even assuming the allegations are true, the actions are insufficiently outrageous to support an intentional infliction of emotional distress claim.

Mr. Peden testified that his claim against Sheriff Conway is based on the granting of access to Mr. Peden's personnel file to the media. Chase Peden Dep. at 246. But there is no evidence linking Sheriff Conway to the release of any of Mr. Peden's information to the media. The undisputed evidence is that the access was granted to Tony Thomas pursuant to an Open Records Request. Mrs. Peden testified that the basis of her claim against Sheriff Conway rests on the investigation and termination of her husband as well as the handling of the Tony Thomas Open Records Request, neither of which were directed toward her. Marjorie Peden Dep. at 220.

When asked about the basis of the claim against Chief Solis, Mr. Peden testified that it was based on Chief Solis' conversation with Glenn Stephens prior to Mr. Peden's termination. Chase Peden Dep. at 246-47. Mr. Peden does

not proffer any evidence or detailed facts that support the finding of severe or outrageous conduct. As for Mrs. Peden, she testified that she based her claim on Chief Solis' decision to terminate her husband based on an investigation that he had no facts to support. Marjorie Peden Dep. at 227. But Chief Solis was not the one who terminated Mr. Peden. Sheriff Conway was. Resp. to DSMF, at ¶ 52. Nothing alleged regarding the conversation or participation in the termination process is atrocious evidence or directed at Marjorie Peden. Thus, the Court grants judgment in favor of Defendants Glenn Stephens, Butch Conway and Lou Solis regarding Count VI.

## IV.   Conclusion

For the reasons stated above, this Court GRANTS Defendant Glenn Stephens' Motion for Summary Judgment [Doc. 127], Defendant Conway's Motion for Summary Judgment [Doc. 128], and Defendant Solis' Motion for Summary Judgment [Doc. 129].

SO ORDERED, this 16 day of December, 2020.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

25

T:\ORDERS\18\Peden\msjtwt.docx